UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROBERTA ELAINE MCCAFFREY,<br><br>    Plaintiff,<br><br>v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>    Defendant. | No. 2:16-cv-03055-KJN<br><br><br>ORDER |

Plaintiff Roberta Elaine McCaffrey seeks judicial review of a final decision by the Commissioner of Social Security ("Commissioner") denying her application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("Act").[1] In her motion for summary judgment, plaintiff principally argues that the decision of the administrative law judge ("ALJ") is based upon legal error and is not supported by substantial evidence in the record. (See ECF Nos. 11, 11-1.) The Commissioner opposed plaintiff's motion and filed a cross-motion for summary judgment. (ECF No. 12.) Thereafter, plaintiff filed a reply brief. (ECF No. 13.)

After carefully considering the record and the parties' briefing, the court DENIES plaintiff's motion for summary judgment, GRANTS the Commissioner's cross-motion for

---

[1] This action was referred to the undersigned pursuant to Local Rule 302(c)(15).

summary judgment, and AFFIRMS the Commissioner's final decision.

I. BACKGROUND

Plaintiff was born on January 17, 1970, and graduated from high school.[2] (Administrative Transcript ("AT") 185, 200.) On August 23, 2012, plaintiff applied for DIB, alleging that her disability began on May 1, 2010. (AT 185–87.) Plaintiff claimed that she was disabled due to arthritis, ankle injury, ACL replaced on right knee, L4 and L5 bulging discs in back, shattered right wrist, and the beginning stages of COPD. (AT 199.) After plaintiff's application was denied initially and on reconsideration, an ALJ conducted a hearing on January 22, 2015. (AT 49–78.) The ALJ subsequently issued a decision dated March 26, 2015, determining that plaintiff had not been under a disability as defined in the Act, from May 1, 2010, the alleged onset date, through December 31, 2012, the date last insured. (AT 21–37.) The ALJ's decision became the final decision of the Commissioner when the Appeals Council denied plaintiff's request for review on October 31, 2016. (AT 1–4.) Plaintiff subsequently filed this action on December 30, 2016, to obtain judicial review of the Commissioner's final decision. (ECF No. 1.)

II. ISSUES PRESENTED

On appeal, plaintiff raises the following issues: (1) whether the ALJ improperly weighed the medical opinion evidence; (2) whether the ALJ improperly discounted plaintiff's credibility; and (3) whether the ALJ's RFC was without substantial evidence support.[3]

III. LEGAL STANDARD

The court reviews the Commissioner's decision to determine whether (1) it is based on proper legal standards pursuant to 42 U.S.C. § 405(g), and (2) substantial evidence in the record as a whole supports it. Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999). Substantial evidence is more than a mere scintilla, but less than a preponderance. Connett v. Barnhart, 340

---

[2] Because the parties are familiar with the factual background of this case, including plaintiff's medical and mental health history, the court does not exhaustively relate those facts in this order. The facts related to plaintiff's impairments and treatment will be addressed insofar as they are relevant to the issues presented by the parties' respective motions.

[3] Plaintiff's opening brief raises the issues in a somewhat different order.

F.3d 871, 873 (9th Cir. 2003) (citation omitted). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007), quoting Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001) (citation omitted). "The court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation." Tommasetti v. Astrue, 533 F.3d 1035, 1038 (9th Cir. 2008).

"[A] reviewing court, in dealing with a determination or judgment which an administrative agency alone is authorized to make, must judge the propriety of such action solely by the grounds invoked by the agency." Sec. & Exch. Comm'n v. Chenery Corp., 332 U.S. 194, 196 (1947). At the same time, in the context of Social Security appeals, "[a]s a reviewing court, we are not deprived of our faculties for drawing specific and legitimate inferences from the ALJ's opinion. It is proper for us to read the . . . opinion, and draw inferences . . . if those inferences are there to be drawn." Magallanes v. Bowen, 881 F.2d 747, 755 (9th Cir. 1989).

IV. DISCUSSION

    A. Summary of the ALJ's Findings

The ALJ evaluated plaintiff's entitlement to DIB pursuant to the Commissioner's standard five-step analytical framework.[4] Preliminarily, the ALJ determined that plaintiff last met the

---

[4] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program. 42 U.S.C. §§ 401 et seq. Supplemental Security Income is paid to disabled persons with low income. 42 U.S.C. §§ 1382 et seq. Both provisions define disability, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment. . . ." 42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A). A parallel five-step sequential evaluation governs eligibility for benefits under both programs. See 20 C.F.R. §§ 404.1520, 404.1571-76, 416.920 & 416.971-76; Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987). The following summarizes the sequential evaluation:

    Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.

    Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.

    Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1? If so, the

3

insured status requirements of the Act on December 31, 2012. (AT 23.)  At step one, the ALJ concluded that plaintiff has not engaged in substantial gainful activity during the period from her alleged onset date of May 1, 2010, through her date last insured. (Id.)  At step two, the ALJ found that plaintiff has the following severe impairments:  right knee pain status post anterior cruciate ligament repair with mild osteoarthritis; morbid obesity; status post right wrist fracture; status post right ankle fracture; history of right shoulder arthroscopy; depression; and marijuana dependence. (Id.)  However, at step three the ALJ concluded that plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (AT 24.)

Before proceeding to step four, the ALJ assessed plaintiff's RFC, finding that plaintiff could perform less than light work as defined in 20 C.F.R. § 416.1567(b), with the following limitations:

> Ms. McCaffrey can lift and carry 20 pounds occasionally and 10 pounds frequently.  She can stand and walk a combined total of four hours in an eight-hour workday.  She may intermittently require the use of a cane when walking.  She can sit for six hours in an eight-hour workday.  She can never climb ladders, ropes or scaffolds.  She can occasionally climb ramps and stairs.  She can frequently balance.  She can never crawl.  She can occasionally stoop, crouch and kneel.  She can occasionally reach to shoulder height with the right arm, but has no other reaching limitations. With the right hand, she can frequently handle, finger and feel.  She can use her left hand without limitation.  She must avoid exposure to extreme cold.  She must avoid concentrated exposure to inhaled irritants and hazards.  She can understand, remember and carry out simple instructions in a setting with no public contact.

claimant is automatically determined disabled.  If not, proceed to step four.

Step four:  Is the claimant capable of performing her past relevant work?  If so, the claimant is not disabled.  If not, proceed to step five.

Step five:  Does the claimant have the residual functional capacity to perform any other work?  If so, the claimant is not disabled. If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process.  Bowen, 482 U.S. at 146 n.5.  The Commissioner bears the burden if the sequential evaluation process proceeds to step five.  Id.

4

(AT 26.) At step four, the ALJ determined that plaintiff was unable to perform any past relevant work, through the date last insured. (AT 35.) However, at step five, the ALJ found that, in light of plaintiff's age, education, work experience, RFC, and the vocational expert's testimony, there were jobs that existed in significant numbers in the national economy that plaintiff could have performed, through the date last insured. (Id.) Thus, the ALJ concluded that plaintiff "was not under a disability, as defined in the Social Security Act, at any time from May 1, 2010, the alleged onset date, through December 31, 2012, the date last insured." (AT 36.)

      B.      <u>Plaintiff's Substantive Challenges to the Commissioner's Determinations</u>

          1.      *Whether the ALJ improperly weighed the medical opinion evidence*

The weight given to medical opinions depends in part on whether they are proffered by treating, examining, or non-examining professionals. Holohan v. Massanari, 246 F.3d 1195, 1201-02 (9th Cir. 2001); Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995). Generally speaking, a treating physician's opinion carries more weight than an examining physician's opinion, and an examining physician's opinion carries more weight than a non-examining physician's opinion. Holohan, 246 F.3d at 1202.

To evaluate whether an ALJ properly rejected a medical opinion, in addition to considering its source, the court considers whether (1) there are contradictory opinions in the record; and (2) clinical findings support the opinions. An ALJ may reject an uncontradicted opinion of a treating or examining medical professional only for "clear and convincing" reasons. Lester, 81 F.3d at 830–31. In contrast, a contradicted opinion of a treating or examining professional may be rejected for "specific and legitimate" reasons. Id. at 830. While a treating professional's opinion generally is accorded superior weight, if it is contradicted by a supported examining professional's opinion (supported by different independent clinical findings), the ALJ may resolve the conflict. Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995) (citing Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989)). The regulations require the ALJ to weigh the contradicted treating physician opinion, Edlund, 253 F.3d at 1157,[5] except that the ALJ

---

[5] The factors include: (1) length of the treatment relationship; (2) frequency of examination; (3) nature and extent of the treatment relationship; (4) supportability of diagnosis; (5) consistency;

in any event need not give it any weight if it is conclusory and supported by minimal clinical findings. Meanel v. Apfel, 172 F.3d 1111, 1114 (9th Cir. 1999) (treating physician's conclusory, minimally supported opinion rejected); see also Magallanes, 881 F.2d at 751. The opinion of a non-examining professional, by itself, is insufficient to reject the opinion of a treating or examining professional. Lester, 81 F.3d at 831.

Plaintiff argues that the ALJ failed to articulate specific and legitimate reasons, supported by substantial evidence, for discounting the opinions of Drs. Musselman, Oliai, and Sunde. (See ECF No. 11-1 at 21–30.) Plaintiff further asserts that the ALJ erroneously ignored Dr. Pollack's opinion. (See Id. at 33.) For the reasons discussed below, these arguments are not well-taken.

### i. **Opinions of Richard Musselman, D.O.**

According to the administrative record, plaintiff began receiving treatment from Dr. Musselman at Pulse Urgent Care on December 7, 2012. (See AT 454–56.) The record contains three RFC questionnaires—purportedly provided by Dr. Musselman—from late 2012, March 2014, and January 2015.[6] (AT 472–75, 588–90.)

Importantly, only the 2012 questionnaire was completed prior to plaintiff's date last insured. (See AT 474–75.) The subsequent questionnaires were each provided over a year after the date last insured and neither attempted to provide retro-active limitations. (See AT 472–73, 588–90.) As such, only the first questionnaire could reasonably provide evidence of plaintiff's alleged disability during the relevant period.

Moreover, each of these questionnaires is a conclusory check-box form, with only minimal explanation. (Id.) Because these opinions were conclusory and supported by minimal clinical findings, the ALJ was not required to give them any weight. See Meanel, 172 F.3d at

---

and (6) specialization. 20 C.F.R. § 404.1527.

[6] The ALJ doubted whether any of these questionnaires were actually signed by Dr. Musselman. (AT 33.) For example, The 2012 questionnaire was originally signed on October 10, 2012, and then later countersigned on December 7, 2012. (See AT 475.) It appears that Dr. Musselman may have provided the second signature, as his first treatment note in the record is dated December 7, 2012. (AT 454–56.) However, the court need not determine the precise origin of these RFC questionnaires because, as explained, the ALJ appropriately discounted these opinions for several other specific and legitimate reasons.

1114. Nonetheless, the ALJ considered these opinions in detail and discounted them (see AT 33–34), concluding that they were "inconsistent with each other, inconsistent with [Dr. Musselman's] medical chart records, and inconsistent with the evidence of the record as a whole." (AT 33.)

The ALJ's conclusions are supported by substantial evidence in the record. First, as the ALJ observed, each of these three questionnaires is inconsistent with one another. On both the 2014 and 2015 questionnaires, plaintiff is listed as suffering from depressive disorder and bipolar disorder, as well as dizziness, drowsiness, and fatigue. (See AT 472, 588.) However, the sole diagnosis listed on the 2012 questionnaire is "719.43" (AT 474), which corresponds with "pain in joint, forearm." See http://www.icd9data.com/2014/Volume1/710-739/710-719/719/719.43.htm (last visited January 8, 2018). Under "side effects of any medication," plaintiff is also reported to be suffering from right wrist pain, bilateral knee pain, and a couple other items that are illegible. (AT 474.) Yet, as the ALJ observed, there is no indication of any mental health or dizziness issues on the 2012 questionnaire (id.) and "[t]he logical inference is that those complaints arose and were treated after the date last insured" and therefore, these questionnaires do not provide evidence of disabling mental conditions during the relevant period. (AT 34.)

Second, Dr. Musselman purportedly opined on the 2012 RFC questionnaire that plaintiff was limited to occasionally lifting up to ten pounds, and never lifting fifty pounds; bilaterally grasping, turning, and twisting objects 30% of the time; bilaterally performing fine manipulation 30% of the time; and bilaterally reaching with the arms 30% of the time. (AT 475.) He also apparently indicated that plaintiff would miss work more than four times in a month due to her conditions, and that she was not capable of working an eight hour day, five days a week on a sustained bases. (Id.) However, as the ALJ accurately observed, Dr. Musselman's treatment notes do not support such extreme limitations. From December 7, 2012, through November 21, 2014, Dr. Musselman's objective findings were largely unremarkable, consistently demonstrating: normal gait; normal musculoskeletal range of motion; good musculoskeletal flexion, extension, and rotation; normal deep tendon reflexes; and normal psychiatric mood and affect. (See AT 454–71, 478–534, 568–85.) Briefly, in July and August of 2014, Dr. Musselman did observe an antalgic gait and abnormal right knee performance (see AT 562–67), both of

which resolved by October 2014. (See AT 583–84.) Thus, there are no objective findings in Dr. Musselman's treatment notes, prior to the date last insured, that support the extreme RFC limitations he purportedly opined on the 2012 questionnaire.

Third, as the ALJ concluded, the record as a whole does not support the extreme limitations opined in the 2012 RFC questionnaire. On September 11, 2011, plaintiff fell off of a picnic table injuring her right wrist, right knee, and right ankle. (AT 325–27.) However, "[b]y mid-February 2012, Dr. Uppal [plaintiff's orthopedist] reported that Ms. McCaffrey was overall doing well and almost walking with a cane . . . Dr. Uppal stated that compared with where [she] had been in September 2011, she was making good progress." (AT 30, 345.) Plaintiff's physical therapy notes from this same period also demonstrate that her condition had significantly improved with treatment. (See AT 352–97.) As the ALJ accurately observed:

> By January 2012, the physical therapist reported that Ms. McCaffrey had made good progress with the right ankle and the right wrist [AT 374]. Ms. McCaffrey had improved strength in the wrist and the ankle such that she reported minimal pain in both. [Id.] She reported being really impressed with her improvement. [Id.] Ms. McCaffrey reported that she had right shoulder pain with inability to lift more than a gallon of milk. [Id.] She reported that she had had this issue for a few years. In March 2012, Ms. McCaffrey reported that her right knee felt good, with pain only when she bent the joint [AT 362]. By April 2012, the physical therapist reported that Ms. McCaffrey had progressed well with improvement in gait and strength [AT 352]. Ms. McCaffrey was reported to have some pain when walking up and down stairs, but she was reported to navigate them safely. [Id.]

(AT 30.)

Therefore, the court finds that the ALJ provided several specific and legitimate reasons for discounting Dr. Musselman's opinion.

### ii. **Opinion of Caspian Oliai, M.D.**

On March 9, 2013, Dr. Oliai performed a consultative examination of plaintiff and provided a functional assessment of her physical limitations. (AT 411–18.) During his onetime examination, Dr. Oliai made a number of physical findings, demonstrating: that plaintiff could not walk on her heels or toes; limited cervical range of motion; pain in hip joints; positive straight leg test with the right leg; limited range of motion and pain in right shoulder; limited range of

8

motion in wrists, fingers, and thumbs; and tenderness in the spine. (AT 414–15.) Based on these findings and plaintiff's own subjective complaints, Dr. Oliai diagnosed plaintiff with: bilateral hip arthritis; chronic lower back musculoskeletal strain at L4-L5; residual weakness and pain of the right upper extremity; and residual right shoulder pain associated with chronic headaches. (AT 417.) Dr. Oliai opined significant limitations for plaintiff including: four hours of sitting, one to two hours of standing, and one to two hours of walking, out of an eight-hour workday; fifteen minute breaks in between each thirty minute seating session; occasional bending, stooping, squatting, and crouching; use of a cane; and rarely reaching overhead with right arm. (AT 417.)

The ALJ considered Dr. Oliai's opinion in detail (see AT 30–32) and accorded it limited weight because:

> Ms. McCaffrey knew that this examination was for disability benefits and her reported symptoms and behaviors at this evaluation are not supported or corroborated by the full record. There are no treating source records that account for Ms. McCaffrey's reports of inability to walk on heals and toes. . . . diagnostic studies of the bilateral hip found no degenerative joint disease [AT 507]. Dr. Olia[]i's conclusions were based on incomplete information and misleading statement[s] from the claimant.

(AT 32.)

The ALJ's conclusion is supported by substantial evidence in the record. First, as the ALJ observed, while plaintiff reported "that she had been previously diagnosed with hip arthritis that was described as debilitating with mild swelling and achiness most severe in the morning" the record does not support this assertion. (AT 31, 412.) No treating physician in the record diagnosed plaintiff with this condition. The only diagnostic image of plaintiff's hip in the record, from October 11, 2013, demonstrated "no acute radiographic abnormalities." (AT 505.) Additionally, while plaintiff subjectively complained of arthritis in her hip as part of her medical history to Dr. Musselman, he did not include this condition in his objective assessments of her. (See AT 469–70, 511–12, 517–18.)

Moreover, as explained, plaintiff's progress notes from 2011 through 2012 indicate that plaintiff's subjective complaints and ability to walk significantly improved after her 2011 fall, as she received treatment and physical therapy. (See AT 325–27, 345, 352–97.) Further,

9

subsequent treatment notes from Dr. Musselman continually demonstrated a normal gait, normal musculoskeletal range of motion, and good musculoskeletal flexion, extension, and rotation. (See AT 454–71, 478–534, 568–85.) Nowhere in plaintiff's treatment notes is she found incapable of walking on her heels and toes.

Additionally, the ALJ pointed out that plaintiff reported to Dr. Oliai that she was able to get in and out of bed, dress and bathe herself, go for a run, drive, cook, clean, as well as do errands, dishes, and laundry. (See AT 412.) At the same time, however, plaintiff complained of debilitating symptoms and pain incongruent with these activities. (See AT 411–12.)

Therefore, the court finds that the ALJ provided several specific and legitimate reasons, supported by substantial evidence, for discounting Dr. Oliai's opinion.

### iii. **Opinion of Chester Sunde, Psy.D.**

On February 20, 2013, Dr. Sunde performed a consultative psychiatric evaluation of plaintiff and provided a functional assessment of her mental limitations. (AT 407–10.) During this onetime examination, Dr. Sunde indicated that plaintiff exhibited "significant mood and anxiety symptoms" (AT 409) and that she

> appears to possibly have some personality disorder symptoms. She states she has multiple personality disorder. She remains very symptomatic despite ongoing psychotherapy and psychiatric intervention.

(AT 409.) Significantly, Dr. Sunde concluded that plaintiff was moderately impaired in numerous abilities and moderately to markedly impaired in her ability to maintain persistence and pace in the normal workplace. (AT 409–10.)

The ALJ considered Dr. Sunde's opinion in detail and accorded it limited weight. (See AT 32–33.) Specifically, the ALJ reasoned that

> Ms. McCaffrey knew this evaluation was for disability benefits; she overstated her physical problems and mental health history, as well as her current level of treatment. Ms. McCaffrey displayed distraction and agitation far in excess of treatment source records at the Sierra Family Medical Clinic where she established care for her mental symptoms in August 2012 [see AT 400–05, 419–33]. This is evidenced by reports of bipolar disorder and multiple personality disorder when the record does not show any specialist diagnosis of either condition. The complaints of mental symptoms to Dr. Sunde

are well out of proportion to her treatment records at Sierra Family Medical Clinic and CFPC records of primary care physician Dr. Edmonds. Ms. McCaffrey had reported well-controlled depression the month prior to this evaluation with Dr. Sunde; no other mental symptoms had been endorsed or alluded to at that time [AT 423].

(AT 33.)

Plaintiff contends that the ALJ erred when discounting Dr. Sunde's opinion in part because no specialist had diagnosed plaintiff with bipolar disorder. According to plaintiff, this was error because "Dr. Musselman, an acceptable source under the regulations (20 C.F.R. § 404.1513(a)(1)), diagnosed Plaintiff with bipolar disorder no later than December 7, 2012." (ECF No. 11 at 30.) This argument is unavailing. Even assuming, without deciding, that the ALJ erred in this respect, any such error is harmless because the ALJ's conclusion, regarding Dr. Sunde's opinion, is otherwise supported by substantial evidence in the record. See Curry v. Sullivan, 925 F.2d 1127, 1129 (9th Cir.1990) (harmless error analysis applicable in judicial review of social security cases); Molina v. Astrue, 674 F.3d 1104, 1111 (9th Cir. 2012) ("we may not reverse an ALJ's decision on account of an error that is harmless").

Significantly, the ALJ's conclusion is based upon her apt description of plaintiff's mental health treatment history that demonstrates plaintiff's mental health conditions had improved prior to the date last insured, undermining the extreme limitations opined by Dr. Sunde. Citing to the record, the ALJ explained:

> CFPC records of primary care physician Dr. Edmonds show that Ms. McCaffrey complained of some depression in July 2012 [see AT 431–32]. Ms. McCaffrey reported that she was depressed over not being able to work due to chronic pain. Dr. Edmonds referred Ms. McCaffrey for a psychological evaluation. Sierra Family Medical Clinic records of Michael Johnson, Ph.D., LCSW, show initial evaluation for depression in August 2012 with reports of labile mood affected by chronic pain and additional stressors such as her sister-in-law, to whom she was close, being diagnosed with brain cancer [AT 400]. Ms. McCaffrey was placed on antidepressant medication. Dr. Edmonds reported that by October 2012, Ms. McCaffrey had appropriate affect and demeanor, normal speech pattern and grossly normal memory [AT 427]. By January 15, 2013, Dr. Edmonds reported Ms. McCaffrey was doing well on Lexapro, which controlled her depression symptoms more effectively and improved her libido [AT 421–23]. At the time of her date last insured, Ms. McCaffrey was reported having had a single episode of major depression controlled on antidepressant medication, and with normal affect and memory on multiple

> examinations [see AT 420–23, 427]. Dr. Musselman's records in February and March 2013 indicate that Ms. McCaffrey's psychiatric mood and affect were within normal limits. [AT 526, 529].

(AT 32.) This description is supported by substantial evidence in the record. (See AT 400, 420–27, 431–32, 526, 529.) What is more, Dr. Musselman's progress notes in the record also indicate that plaintiff's normal psychiatric mood and affect continued unchanged through 2014, further supporting the ALJ's conclusion. (See AT 454–71, 478–534, 568–85.)

Therefore, the court finds that the ALJ provided several specific and legitimate reasons for discounting Dr. Sunde's opinion.

### iv. **Opinion of Margaret Pollack, Ph.D.**

The ALJ is required to evaluate each medical opinion in the record. See 20 C.F.R § 404.1527(c). However, when "interpreting the evidence and developing the record, the ALJ does not need to 'discuss every piece of evidence.'" Howard ex rel. Wolff v. Barnhart, 341 F.3d 1006, 1012 (9th Cir. 2003) (citations omitted).

Dr. Pollack is a state agency psychologist who reviewed plaintiff's records and provided a mental RFC in October 2013. (See AT 111–12.) While the ALJ did not expressly mention Dr. Pollack's mental RFC in her decision, it is clear that the ALJ adopted Dr. Pollack's opinion. The ALJ explicitly adopted "the [s]tate agency medical consultant's residual functional capacity assessment" included in Exhibit 3A. (AT 35) Dr. Pollack's mental RFC is also included in Exhibit 3A. (See AT 98–116.) The ALJ apparently meant to signal that she had adopted both the physical and mental RFCs included in Exhibit 3A, as evidenced by the fact that the RFC the ALJ formulated encompassed Dr. Pollack's opined limitations.

Dr. Pollack opined that plaintiff was moderately impaired in a number of categories, including her ability to perform at a consistent pace and persistence. (Id.) At the same time, Dr. Pollack further opined that plaintiff was not significantly limited in her ability to carry out very short and simple instructions; to sustain an ordinary routine without special supervision; to make simple work-related decisions; to accept instructions and respond appropriately to criticism from supervisors; or to maintain socially appropriate behavior and to adhere to basic standards of

12

neatness and cleanliness. (Id.) Moreover, these limitations were reviewed and endorsed by state agency psychiatrist, David Gross, M.D., who opined that plaintiff's "[c]ondition should permit sustained unskilled work w/LPC." (AT 112.) This statement was subsequently reviewed and endorsed by Dr. Pollack. (Id.)

Thus, Dr. Pollack's mental RFC permitted unskilled work with limited public contact, which is encompassed by the ALJ's RFC of less than skilled work; the ability to understand, remember, and carry out simple instructions; and no public contact. (AT 26) Therefore, the ALJ appropriately evaluated and adopted the opinion of Dr. Pollack.

2. *Whether the ALJ improperly discounted plaintiff's credibility*

In Lingenfelter v. Astrue, 504 F.3d 1028 (9th Cir. 2007), the Ninth Circuit Court of Appeals summarized the ALJ's task with respect to assessing a claimant's credibility:

> To determine whether a claimant's testimony regarding subjective pain or symptoms is credible, an ALJ must engage in a two-step analysis. First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged. The claimant, however, need not show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom. Thus, the ALJ may not reject subjective symptom testimony . . . simply because there is no showing that the impairment can reasonably produce the degree of symptom alleged.
>
> Second, if the claimant meets this first test, and there is no evidence of malingering, the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so. . . .

Lingenfelter, 504 F.3d at 1035-36 (citations and quotation marks omitted). "At the same time, the ALJ is not required to believe every allegation of disabling pain, or else disability benefits would be available for the asking. . . ." Molina v. Astrue, 674 F.3d 1104, 1112 (9th Cir. 2012).

"The ALJ must specifically identify what testimony is credible and what testimony undermines the claimant's complaints." Valentine v. Comm'r of Soc. Sec. Admin., 574 F.3d 685, 693 (9th Cir. 2009) (quoting Morgan v. Comm'r of Soc. Sec. Admin., 169 F.3d 595, 599 (9th Cir.

13

1999)).  In weighing a claimant's credibility, an ALJ may consider, among other things, the "'[claimant's] reputation for truthfulness, inconsistencies either in [claimant's] testimony or between [her] testimony and [her] conduct, [claimant's] daily activities, [her] work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which [claimant] complains.'"  Thomas v. Barnhart, 278 F.3d 947, 958–59 (9th Cir. 2002) (modification in original) (quoting Light v. Soc. Sec. Admin., 119 F.3d 789, 792 (9th Cir. 1997)).  If the ALJ's credibility finding is supported by substantial evidence in the record, the court "may not engage in second-guessing."  Id. at 959.

As an initial matter, the court notes that the ALJ did not entirely discredit plaintiff's allegations of disabling physical and mental conditions.  Indeed, the ALJ limited plaintiff to less than light work, with various other physical and mental limitations.  (See AT 26.)  Nevertheless, to the extent that the ALJ discounted plaintiff's testimony regarding her symptoms and functional limitations, the ALJ provided several specific, clear, and convincing reasons for doing so.  The ALJ reasoned that plaintiff's allegations concerning the intensity, persistence and limiting effects of her symptoms were not entirely credible "for the reasons discussed throughout th[e] decision" (AT 27), including inconsistencies between plaintiff's subjective complaints and her own statements, her medical records, as well as her conservative and successful treatment.  (See AT 26–35.)

### i. Inconsistent statements in the record

The ALJ appropriately relied upon plaintiff's own inconsistent statements, when discounting her credibility.  See Thomas, 278 F.3d at 958–59.  First, the ALJ observed that plaintiff reported "drastically different" complaints to consultative examiners Drs. Sunde and Oliai, who she saw within a month of each other.  (AT 31.)  On February 20, 2013, plaintiff reported to Dr. Sunde that "she rarely goes grocery shopping. . . . does not do much cleaning or cooking. . . . [and] interacts just with her immediate family."  (AT 408.)  Yet, on March 9, 2013, plaintiff told Dr. Oliai that "she is able to drive, cook, and clean. . . . [and] she spends a typical day 'drinking coffee . . . with friends visiting or maybe going for a run or doing errands.  Possibly the dishes or laundry.'"  (AT 412.)

14

Second, the ALJ pointed out that plaintiff reported to Dr. Oliai that she had been diagnosed with hip arthritis, while the record does not support that assertion. As explained, the only diagnostic imaging of plaintiff's hips showed no abnormal findings. (AT 507.) Additionally, while Dr. Musselman listed hip arthritis as an historic diagnosis, this was based upon plaintiff's own subjective complaints and not any objective findings. (See AT 469–70, 511–12, 517–18.)

Third, the ALJ observed that "[i]nterestingly, although Ms. McCaffrey presented with a cane [to Dr. Oliai] and reported the need for one, the records of her treating physician, Dr. Musselman consistently reported normal gait, range of motion and motor strength throughout." (AT 31.) This observation is supported by the record. (See AT 417, 454–71, 478–534, 568–85.)

Fourth, the ALJ concluded that plaintiff overstated her mental health history to Dr. Sunde. (AT 33.) The record supports this determination, as well. For example, plaintiff reported to Dr. Sunde that she had been diagnosed with multiple personality disorder (see AT 407), a claim not substantiated elsewhere in the record.

Fifth, the ALJ appropriately determined that plaintiff's subjective complaints to Dr. Sunde "were well out of proportion to her treatment records" from a month earlier when she "had reported well-controlled depression." (AT 33.) This conclusion is supported by substantial evidence in the record. On January 10, 2013, plaintiff was seen for a follow up on her depression. She did not display any acute symptoms during the exam, but did request a change in medication that was granted. (AT 421) She reported feeling better on Lexapro as opposed to Celexa. (Id.) Her reported symptoms were "negative for crying spells and depression." (Id.) Her objective psychiatric examination revealed "appropriate affect and demeanor, normal speech pattern and a normal memory." (AT 422.)

### ii. Objective medical evidence

"[A]fter a claimant produces objective medical evidence of an underlying impairment, an ALJ may not reject a claimant's subjective complaints based solely on a lack of medical evidence to fully corroborate the alleged severity of pain." Burch v. Barnhart, 400 F.3d 676, 680 (9th Cir. 2005) (citing Bunnell v. Sullivan, 947 F.2d 341, 345 (9th Cir. 1991)). Although lack of medical

evidence cannot form the sole basis for discounting plaintiff's subjective symptom testimony, it is nevertheless a relevant factor for the ALJ to consider. Burch, 400 F.3d at 681.

Here, as explained, plaintiff's records demonstrate that plaintiff's right wrist, right ankle, and right knee injuries had significantly improved with treatment, after her fall in September of 2011, and that Dr. Musselman observed largely normal physical and mental findings that remained stable through 2014. (See AT 325–27, 345, 352–97, 454–71, 478–534, 568–85.)

### iii. Conservative treatment

Plaintiff's relatively conservative treatment was also a proper consideration. See Tommasetti v. Astrue, 533 F.3d 1035, 1039–40 (9th Cir. 2008) (reasoning that a favorable response to conservative treatment undermines complaints of disabling symptoms); Parra v. Astrue, 481 F.3d 742, 751 (9th Cir. 2007) ("We have previously indicated that evidence of conservative treatment is sufficient to discount a claimant's testimony regarding severity of an impairment"); Fair v. Bowen, 885 F.2d 597, 604 (9th Cir. 1989).

While plaintiff underwent right wrist open reduction internal fixation and right ACL reconstruction surgery in 2011 (see AT 345), the record demonstrates that plaintiff improved significantly after surgery with physical therapy (see AT 352–97), and was subsequently treated with pain medication for her associated physical symptoms. (See AT 463, 467, 470, 481, 488, 491, 494, 496, 500, 503, 509, 512, 518, 521, 523, 527, 530, 563, 566, 571, 581, 584.) Similarly, plaintiff's mental conditions were treated with counseling and psychiatric medication. (See AT 400, 420–27, 431–32, 454–71, 478–534, 568–85.) This relatively conservative treatment up to and beyond the date last insured tends to demonstrate longitudinal progress, followed by a stable condition that belies plaintiff's alleged disabling symptoms.

### iv. Condition can be controlled with medication

A condition that can be controlled or corrected by medication is not disabling for purposes of determining eligibility for benefits under the Act. See Warre v. Comm'r of Soc. Sec. Admin., 439 F.3d 1001, 1006 (9th Cir. 2006); Montijo v. Sec'y of Health & Human Servs., 729 F.2d 599, 600 (9th Cir. 1984); Odle v. Heckler, 707 F.2d 439, 440 (9th Cir. 1983).

////

Dr. Musselman's records, which the ALJ relied on, demonstrate that while plaintiff received pain and psychiatric medication, her conditions were controlled, as she consistently presented with a normal gait, normal musculoskeletal findings, and a normal psychiatric mood and affect. (See AT 454–71, 478–534, 568–85.)

### v. Third party testimony

"[C]ompetent lay witness testimony cannot be disregarded without comment" and "in order to discount competent lay witness testimony, the ALJ must give reasons that are germane to each witness." Molina v. Astrue, 674 F.3d 1104, 1114 (9th Cir. 2012) (internal quotation and citation omitted). Here, the ALJ summarized the third-party statements in detail, and provided reasons germane to each witness when discounting each statement. (See AT 27–30.)

Plaintiff argues, however, that the ALJ did not provide enough germane reasons sufficient to discount all of the third-party testimony. (ECF No. 11-1 at 36.) This argument is not persuasive. These third-party statements essentially echoed plaintiff's own testimony and, as discussed above, the ALJ already provided specific, clear, and convincing reasons for discounting plaintiff's testimony, which are equally germane to the third-party testimony. As such, any error in not explicitly re-stating, or incorporating by reference, the reasons given for discounting plaintiff's testimony with respect to these third parties was harmless and remand is not warranted. See Molina, 674 F.3d at 1115-22.

3. *Whether the ALJ's RFC was without substantial evidence support*

Plaintiff argues that the RFC is without substantial evidence support because of the alleged errors the court analyzed and rejected above, and because the RFC only limits plaintiff to simple, unskilled work even though plaintiff was found to be moderately limited in concentration, persistence, and pace. (ECF No. 11-1 at 31 (citing Brink v. Comm'r SSA, 343 Fed. App'x 211, 212 (9th Cir. 2009)).) These arguments are unavailing.

An RFC "is the most [one] can still do despite [his or her] limitations" and it is "based on all the relevant evidence in [one's] case record," rather than a single medical opinion or piece of evidence. 20 C.F.R. § 404.1545(a)(1). "It is clear that it is the responsibility of the ALJ, not the claimant's physician, to determine residual functional capacity." Vertigan v. Halter, 260 F.3d

1044, 1049 (9th Cir. 2001) (citing 20 C.F.R. § 404.1545). It is well-established that moderate mental impairments and the ability to perform simple tasks can be translated into an RFC allowing for unskilled work. See Stubbs-Danielson v. Astrue, 539 F.3d 1169, 1174–76 (9th Cir. 2008).

Here, as explained, the ALJ formulated an RFC that encompassed Dr. Pollack's findings of moderate mental impairments. Dr. Pollack opined that plaintiff was moderately impaired in a number of categories, including her ability to perform at a consistent pace and persistence. (AT 111–12.) At the same time, Dr. Pollack explicitly endorsed the conclusion that plaintiff's mental impairments would permit sustained unskilled work with limited public contact (AT 112), which the ALJ appropriately translated into an RFC limiting plaintiff to less than skilled work; the ability to understand, remember, and carry out simple instructions; and no public contact (AT 26). See Stubbs-Danielson, 539 F.3d at 1174–76.

Furthermore, for all the reasons discussed above, the court finds that the ALJ appropriately evaluated the medical opinion evidence and plaintiff's credibility. Therefore, the RFC is supported by substantial evidence.

V.  CONCLUSION

For the foregoing reasons, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment (ECF No. 11) is DENIED.
2. The Commissioner's cross-motion for summary judgment (ECF No. 12) is GRANTED.
3. The final decision of the Commissioner is AFFIRMED, and judgment is entered for the Commissioner.
4. The Clerk of Court shall close this case.

IT IS SO ORDERED.

Dated:  January 23, 2018

KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE

14/ss.mccaffrey.16-3055.order